Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| JONAH BLAKE SIMS, MACIEL ADRIANA SIMS Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS, POR SÍ Y EN REPRESENTACIÓN DE SU HIJO MENOR, JBSM<br><br>Recurrida<br><br>v.<br><br>WESLEYAN ACADEMY, INC.; IGLESIA EVANGÉLICA WESLEYANA, DISTRITO DE PUERTO RICO, INC.<br><br>Peticionaria | TA2026CE00760 | *CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Civil núm.: GB2024CV00732<br><br>Sobre: Incumplimiento de Contrato, Líbelo, Calumnia o Difamación, Violación de Derechos Civiles |

Panel integrado por su presidente el juez Hernández Sánchez, el juez Rivera Torres y el juez Marrero Guerrero

**Rivera Torres, Juez Ponente**

### RESOLUCIÓN

En San Juan, Puerto Rico, a 30 de junio de 2026.

Comparece ante este tribunal apelativo, la Iglesia Evangélica Wesleyana, Distrito de Puerto Rico (I.E. Wesleyana o peticionaria) mediante el recurso de *certiorari* de epígrafe solicitándonos que revisemos la *Resolución Interlocutoria* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI), el 14 de mayo de 2026, notificada al siguiente día. Mediante este dictamen, el foro primario declaró *No Ha Lugar* a la moción de desestimación presentada por la peticionaria.

Por los fundamentos que expondremos a continuación, denegamos expedir el auto de *certiorari* solicitado.

## I.

El presente caso tiene su génesis el 22 de agosto de 2024, cuando el Sr. Jonah Blake Sims (señor Blake Sims), la Sra. Maciel Adriana Sims (señora Sims), la Sociedad Legal de Gananciales compuesta por ambos y el menor JBSM (en conjunto, los recurridos), presentaron una demanda sobre incumplimiento contractual; violación al debido proceso de ley y a la Carta de Derechos del Estudiante de Puerto Rico; difamación; daños y perjuicios contra la Wesleyan Academy, Inc. (Academia).[1]

Posteriormente, el 18 de febrero de 2025, los recurridos presentaron una Demanda Enmendada para añadir como codemandada a la peticionaria.[2] Ello ocurrió luego de que alegadamente tomaron conocimiento de que esta entidad era la que, al momento de presentar la referida demanda, operaba la Academia. Mediante esta alegaron que, para octubre de 2023, comenzaron a notar un patrón disciplinario infundado en contra de JBSM. Arguyeron que tal patrón se dio mediante el envío de notificaciones por parte de la Academia, en las cuales se les informaba acerca de alegadas infracciones a las normas de la institución por parte de JBSM.

Al respecto, detallaron que el menor fue expulsado de la Academia por haber incurrido en varias violaciones a las políticas de la Academia incluyendo robo, intimidación y amenazas a un estudiante con un cuchillo, y a otro físicamente, más le mostró un arma de fuego a través de una comunicación electrónica. Indicaron que dicha decisión se tomó sin haberle otorgado al menor la oportunidad de ser escuchado. Adujeron, además, que este no incurrió en la conducta imputada relativa a la intimidación y

---

[1] Véase, el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI), Entrada núm. 1.
[2] SUMAC TPI, Entrada núm. 27.

amenaza al estudiante con el cuchillo, ya que, al momento de los hechos, el menor no estaba en la Academia, ni en Puerto Rico. También precisaron que la decisión fue contraria al *Wesleyan Academy School Community Handbook*, manual que rige las acciones de la academia para con sus estudiantes y la comunidad.

Asimismo, sostuvieron que las referidas alegaciones no fueron evidenciadas, pues las mismas nunca ocurrieron. Añadieron que estas acciones escalaron rápidamente e incluyeron referidos a consejería, suspensiones y; finalmente, la expulsión del menor en diciembre de 2023.

Así pues, acentuaron que el 19 de diciembre de 2023, la Academia, a través de su Director Escolar, envió a los recurridos una carta intitulada *No Return Notificacion Letter*. Mediante esta, se les informó que el Comité de Admisiones de la Academia determinó no ofrecerle a JBSM la readmisión para el segundo semestre del año escolar 2023-2024. Arguyeron que la referida carta de expulsión no hacía mención alguna a los valores religiosos de la institución; así como tampoco fundamentaba la determinación de expulsión.

En virtud de lo anterior, solicitaron al tribunal que ordenase a la Academia y a la peticionaria resarcirle los daños económicos, morales y perjuicios ocasionados en una suma no menor de $800,000 más costas, gastos y honorarios de abogado.

El 4 de abril de 2025, la peticionaria presentó su *Contestación a la Demanda Enmendada*, en la que, en síntesis, negó las alegaciones hechas en su contra.[3] Asimismo, levantó varias defensas afirmativas, entre las que se encontraba la falta de jurisdicción sobre la materia, a tenor con el principio constitucional de Separación de Iglesia y Estado.

---

[3] SUMAC TPI, Entrada núm. 38.

En lo pertinente a la controversia ante nuestra consideración, tras varios incidentes procesales, el 13 de marzo de 2026, concluido el descubrimiento de prueba, la peticionaria presentó una *Moción de Desestimación por Falta de Jurisdicción*.[4] En esta sostuvo que la controversia versaba sobre las acciones disciplinarias impuestas por una institución educativa, de carácter religioso, con el fin de reivindicar y fortalecer los valores cristianos que la Academia promueve. Alegó que la situación que culminó con la presentación de la demanda, la expulsión de JBSM, fue una decisión conforme a los protocolos evangélico-cristianos que promueve la Academia en su Reglamento, cuyo norte y propósito afirmó que eran de estirpe puramente cristiana.

En consideración a lo anterior, arguyó que no procedían los reclamos de incumplimiento de contrato y violación de derechos civiles. Asimismo, razonó que las doctrinas constitucionales de separación de Iglesia y Estado y de Libertad de Culto no permiten que los tribunales seculares puedan entender, pasar juicio y adjudicar controversias en las que están involucrados asuntos de dogma, fe, doctrina eclesiástica, disciplina de la Iglesia Wesleyana para con sus miembros y otros asuntos internos y sensitivos de la Religión Wesleyana sobre la imposición de medidas disciplinarias. Además, arguyó que, los recurridos voluntariamente aceptaron que se disciplinara al menor, conforme a los preceptos de la institución desde que JBSM fue matriculado en la Academia.

En cuanto a los reclamos por difamación, sostuvo que cualquier comunicación que emitió la Academia se realizó y se manejó conforme a los preceptos religiosos de la institución. Arguyó que, debido a ello los tribunales tampoco poseen potestad de dirimir cualquier alegación de difamación cuando envuelven elementos de

---

[4] SUMAC TPI, Entrada núm. 126.

naturaleza dogmática, como alegadamente es la situación en controversia. Por lo que solicitó que la demanda fuera desestimada.

El 27 de marzo de 2026, los recurridos presentaron su escrito en oposición a la desestimación.[5] Mediante dicho escrito arguyeron que la acción instada versaba sobre principios neutrales de derecho, por lo cual no se requería que los tribunales intervinieran con asuntos relacionados al dogma o a la fe cristiano-evangélica. Puesto que los reclamos eran sobre incumplimiento de contrato e incumplimiento con las leyes aplicables a toda entidad educativa, sean estas públicas o privadas, y por difamación.

Arguyeron que no cuestionaban los valores cristianos en los cuales se fundamentan los procesos disciplinarios de la Academia. Sostuvieron que, por el contrario, lo que cuestionan es que esta no haya seguido los procesos que la propia Academia estableció y se comprometió contractualmente a seguir. Añadieron que no cuestionan la facultad de la Academia para imponer sanciones por ciertas faltas que violen sus principios cristianos y que estén debidamente codificadas como violaciones en su Reglamento. Arguyeron que su reclamo es que, antes de imponer dichas sanciones, la Academia tenía la obligación de investigar las alegaciones, corroborarlas, permitir a la persona acusada expresarse sobre las mismas y; entonces, determinar si, a base de toda la información disponible, se cometió la conducta que conlleva la sanción.

Por lo que, a tales efectos, señalaron que su solicitud era que se determinara si la Academia concedió a los recurridos un debido proceso de ley y cumplió con las obligaciones contractuales que surgen de su propio Reglamento. Concluyeron que el hecho de que la Academia esté afiliada a una iglesia y su enseñanza se enmarca

---

[5] SUMAC TPI, Entrada núm. 136.

en la fe cristiana, ello no era obstáculo para que se puedan dilucidar ante un tribunal las controversias relacionadas con el cumplimiento de los derechos constitucionales, las leyes y los reglamentos internos de una institución educativa. Por lo cual, solicitaron que se denegara la solicitud de desestimación presentada por la peticionaria.

Atendidos los escritos de las partes, el 14 de mayo de 2026, el TPI emitió una *Resolución Interlocutoria*, notificada al día siguiente, en la que declaró *No Ha Lugar* a la moción de desestimación presentada por la peticionaria.[6]

En desacuerdo, la I.E. Wesleyana acudió ante este foro intermedio mediante el recurso de *certiorari* de epígrafe imputándole al foro primario la comisión del siguiente error:

> ERRÓ EL HONORABLE TPI AL DECLARAR NO HA LUGAR LA MOCIÓN DE DESESTIMACIÓN DE IGLESIA POR FALTA DE JURISDICCIÓN SOBRE LA MATERIA AL AMPARO DEL ARTÍCULO II, SECCIÓN 3 DE LA CONSTITUCIÓN DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO Y LA PRIMERA ENMIENDA DE LA CONSTITUCIÓN DE LOS ESTADOS UNIDOS, SOBRE LA SEPARACIÓN DE IGLESIA Y ESTADO.

El 15 de junio de 2026, emitimos una *Resolución* concediéndole a la parte recurrida hasta el 24 de junio de 2026 para expresarse. Llegado ese día, se cumplió con lo ordenado mediante el escrito intitulado *Oposición a la Expedición del Auto de Certiorari*. Así, nos damos por cumplidos; y a su vez, decretamos perfeccionado el recurso.

Analizados los escritos de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

## II.

**Auto de *Certiorari***

El recurso de *certiorari* es el vehículo procesal discrecional disponible para que un tribunal apelativo revise las resoluciones y

---

[6] SUMAC TPI, Entrada núm. 138.

órdenes interlocutorias de un tribunal de inferior jerarquía. Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1; *García v. Padró*, 165 DPR 324, 334 (2005). Todo recurso de *certiorari* presentado ante este foro apelativo deberá ser examinado primeramente al palio de la Regla 52.1 de las de Procedimiento Civil, *supra*. Dicha regla limita la autoridad y el alcance de la facultad revisora de este foro apelativo sobre órdenes y resoluciones dictadas por el foro de primera instancia, revisables mediante el recurso de *certiorari*. La referida norma dispone como sigue:

> Todo procedimiento de apelación, certiorari, certificación, y cualquier otro procedimiento para revisar sentencias y resoluciones se tramitará de acuerdo con la ley aplicable, estas reglas y las reglas que adopte el Tribunal Supremo de Puerto Rico.
>
> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, **solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo.** No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando **se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia**. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 de este apéndice sobre los errores no perjudiciales. Regla 52.1 de Procedimiento Civil, supra. [Énfasis Nuestro].

Por tanto, el asunto que se nos plantea en el recurso de *certiorari* deberá tener cabida bajo alguna de las materias reconocidas en la Regla 52.1 de las de Procedimiento Civil, *supra*. Ello, debido a que el mandato de la mencionada regla dispone expresamente que solamente será expedido el auto de *certiorari* para la revisión de remedios provisionales, interdictos, denegatoria de

una moción de carácter dispositivo, admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia y en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

Así, pues, para determinar si debemos expedir un auto de *certiorari* debemos determinar primeramente si el asunto que se trae ante nuestra consideración versa sobre alguna de las materias especificadas en la Regla 52.1 de las de Procedimiento Civil, *supra*. Sin embargo, aun cuando el asunto esté contemplado por dicha regla, para determinar si procede la expedición de un recurso y poder ejercer sabiamente nuestra facultad discrecional, debemos acudir a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 63, 215 DPR __ (2025), que dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Estos criterios sirven de guía para poder determinar, de manera sabia y prudente, si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra el caso. *Torres Martínez*

*v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). Es decir, que el examen que emplea el foro apelativo no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG*, 205 DPR 163, 176 (2020).

De otra parte, el ejercicio de las facultades del Tribunal de Primera Instancia merece nuestra deferencia, por tanto, solo intervendremos con el ejercicio de dicha discreción en aquellas instancias que se demuestre que el foro recurrido: (1) actuó con prejuicio o parcialidad; (2) incurrió en un craso abuso de discreción; o (3) se equivocó en la interpretación de cualquier norma procesal o de derecho sustantivo. *BBPR v. SLG Gómez-López*, 213 DPR 314, 334-335 (2023); *Ramos v. Wal-Mart*, 165 DPR 510, 523 (2006); *Rivera Durán v. Banco Popular de Puerto Rico*, 152 DPR 140,155 (2000).

**III.**

En esencia, la peticionaria señaló que el TPI erró al denegar la moción de desestimación ante la falta jurisdicción sobre la materia por razón de la separación de iglesia y estado.

Analizado el recurso ante nuestra consideración, en principio, señalamos que todo auto de *certiorari* presentado ante este foro intermedio deberá ser examinado primeramente al palio de la Regla 52.1 de las de Procedimiento Civil, *supra*. De una lectura de la referida norma, surge que nuestro ordenamiento jurídico procesal permite la intervención del foro apelativo mediante *certiorari* para revisar una determinación sobre la denegatoria de una moción de carácter dispositivo como acontece en el presente caso. Sin embargo, cabe señalar, a su vez, que superados los criterios de la Regla 52.1, *supra*, para determinar si procede la expedición de un recurso y poder ejercer sabiamente nuestra facultad discrecional, debemos acudir a lo dispuesto en la Regla 40, *supra*.

Al respecto, examinado el recurso presentado, así como los documentos incluidos en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), colegimos que, al palio de la Regla 40 de nuestro Reglamento, antes citada, no procede intervenir en esta etapa de los procedimientos. Esto, debido a que no se nos ha demostrado que el TPI haya incurrido en error, abuso de discreción o actuado bajo prejuicio o parcialidad en el manejo del caso. La peticionaria tampoco nos persuade a concluir que sea necesario ejercer nuestra facultad revisora para evitar un fracaso irremediable de la justicia.

**IV.**

Por los fundamentos antes expuestos, denegamos la expedición del recurso de *certiorari* solicitado.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones